```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division
```

UNITED STATES f/u/b/o          )
ALLSITE CONTRACTING, LLC,      )
                               )
     Plaintiff,                )
                               )
     v.                        )
                               )      1:10cv1068
HARTFORD FIRE INSURANCE CO.,   )
                               )
     Defendant.                )

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Hartford Fire Insurance Company's ("Defendant" or "Hartford") Motion to Dismiss or for Summary Judgment ("MSJ"). [Dkt. 7.] For the following reasons, the Court will grant summary judgment in favor of Defendant.

### I. Background

Plaintiff is suing Defendant for recovery under a performance bond--set pursuant to the Miller Act, 40 U.S.C. § 3131-34--for its work on the Marine Corps Base at Quantico, Virginia. That work was precipitated by a contract between John C. Grimberg Co. and the United States for the construction of the Marine Corps D/B SNCO Academic Facility (Contract No. N62477-04-D-0012 Task Order 0020) (the "Project"). (Compl. ¶ 7.) As required by the Miller Act, Grimberg, as principal, and

1

Hartford, as surety, furnished a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). (Compl. ¶ 8.) Grimberg then entered into a subcontract with Plaintiff AllSite Contracting, LLC, which was formerly known as Wise Guys Contracting ("Plaintiff" or "AllSite"). (Compl. ¶¶ 2, 9.)

Between the formation of this subcontract and July 28, 2009, Grimberg issued 25 "change orders" to AllSite, each adjusting the work to be performed and the amount to be paid, and each agreed to by both parties. (Compl. ¶ 10; MSJ Ex. A.) Then, on July 28, 2009, AllSite signed and submitted an "Application and Certificate for Payment" (the "Certificate"), which Grimberg claims it received on August 17, 2009. (MSJ ¶ 6.) In it, AllSite certified that "the work covered by this Application for payment has been completed in accordance with the contract documents." (MSJ Ex. A.) It included all 25 "change orders." *Id.* Further, AllSite's last certified payroll record for the Project indicates that the last date on which it performed work for Grimberg was August 26, 2009. (MSJ at ¶ 7, MSJ Ex. B.)

AllSite argues that these documents merely requested compensation for work performed *thus far*, as opposed to the total work on the contract. (Opp. ¶ 9.) Defendant claims,

2

however, that these documents signify AllSite's last work on the Project besides "warranty work" on a collapsed sidewalk performed in June 2010. (MSJ ¶ 8.) AllSite disagrees with the characterization of this latter work as "warranty work," arguing that it was requested by Grimberg and that it was not necessitated by any defects in AllState's earlier work. (Opp. ¶¶ 2, 4.) This disagreement over whether or not AllState's June 2010 work was "warranty work" is at the heart of the instant motion.

Plaintiff filed its complaint on September 24, 2010, alleging that Grimberg wrongfully failed and refused to pay a sum of $108,469.80 for work performed on the Project. [Dkt. 1 ¶ 11.] Plaintiff filed an Amended Complaint ("Am. Compl.") on October 7, 2010, stating that $105,474.57 remained wrongfully unpaid. (Am. Compl. ¶ 12.) Exhibit B to the Amended Complaint broke down this sum into a series of unpaid invoices, the last of which was allegedly submitted on July 28, 2009. AllSite is therefore not attempting to recover funds for the disputed "warranty work"--all the funds it seeks to recover are for its earlier work for Grimberg.

Defendant moves to dismiss or for summary judgment, arguing that Plaintiff's claims are barred by the Miller Act's 1-year statute of limitations, because Plaintiff last performed work no later than August 26, 2009, and did not file its

3

Complaint until September 24, 2010. Plaintiff responds that it performed work until June 2010, at which point the Statute of Limitations began to run. Defendant's motion is before the Court.

## II. Standard of Review

A. <u>Motion to Dismiss</u>

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of a plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id*. at 1965. In its recent decision,

*Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) test.  First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth.  *Id.* at 1951.  "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice.  *Id.* (citations omitted).  Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief."  *Id.* at 1950-51.  The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully".  *Id.* at 1949.  In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

      B.   <u>Summary Judgment</u>

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps.*

*& Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-

movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

The instant dispute involves the question of whether Plaintiff's claim is barred by the Miller Act's one-year statute of limitations. *See* 40 U.S.C. 3133(b)(4). The applicable statue reads: "An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." *Id.* And the Fourth Circuit's test under this statute is: "whether the work was performed and the material supplied as part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project." *United States f/b/o Magna Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249, 251 (4th Cir. 1983). Correction or repair materials and labor do not toll the statue, but labor or materials furnished pursuant to the original subcontract do. *United States v. Fidelity and Deposit Co. of Maryland*, 999 F. Supp. 734, 742-43 (D.N.J. 1998).

The parties here dispute whether AllSite's June 2010 work is properly considered "part of the original contract" or work "for the purpose of correcting defects, or making repairs."

7

*See id.* Plaintiff argues that "[t]he last work performed by AllSite on the Project occurred when AllSite *was instructed by Grimberg* to perform labor at the work site." (Opp. at 3 (emphasis added).) In support of this, Plaintiff submits an affidavit from its CEO, John Forster, stating that "[t]he work done in June 2010 was not warranty work." (Opp. Ex. A, ¶ 2.) Forster goes on to state, "In June 2010, *at Grimberg's request*, AllSite dug up the portions of the sidewalk that had subsided." (Opp. Ex. A, ¶ 8 (emphasis added).)

Grimberg's request took the form a letter to AllSite, sent May 4, 2010, which stated the following:

> The warranty period for SNCO Academic Facility is near expiration but there are still some outstanding punch list items and other warranty issues that need to be addressed.
>
> . . . .
>
> 3. Sidewalk: Collapsed sidewalk near storm outfall inlet. See attached pictures for reference.
>
> . . . .
>
> Please provide the government with course of action for repairs or correction of the items mentioned above and an estimated time period for execution of each action.

(MSJ Ex. C.)

This letter makes clear that, *in Grimberg's view*, it was requesting warranty work. AllSite, however, claims that the work requested was not warranty work because it was necessitated

8

by flaws in the Navy and Grimberg's design specifications as opposed to problems with AllSite's execution of its contract. (Opp. ¶ 4.)  That dispute--over whether the work requested actually *should have been* required by warranty--is now beside the point.

The instant dispute turns on whether the work requested was (a) correction or repair materials or (b) labor or materials furnished pursuant to a requirement of the original subcontract.  *See Fidelity*, 999 F. Supp. at 742-43.  Of course, the original subcontract would have been useful for answering this question, but the Court is without one.  Still, common sense places the work at issue here firmly in category (a).  No original subcontract would call for a sidewalk to be built, dug up, and rebuilt.  If a subcontract called for the building of a sidewalk, the only way it would also call for that sidewalk to be dug up and rebuilt would be under a warranty.  The work here therefore may or may not have been *deserved* under a warranty, but it could not have been part of the original subcontract.

This is true despite AllSite's contention that, because 25 change orders were issued during the course of its activity on the Project, "ambiguity and disorganization . . . plagued the project," making it unclear "when or if further construction would be needed from it, or what the nature of that activity would be."  (Opp. at 4-5.)  This argument is unavailing

9

because the Certificate for Payment, signed by AllSite on July 28, 2009, which accounts for *all* of these change orders, certified that all of the work required under those change orders was complete. (MSJ Ex. A.) Thus, as of July 28, 2009, there should not have been any further confusion resulting from the change orders. The Court also notes that Grimberg requested that the sidewalk repairs be done as "warranty" work (MSJ. Ex. 3), and AllSite, without protest, began fulfilling that request (Opp. Ex. A, ¶ 8). Not until this lawsuit did AllSite actually dispute the characterization of its work as "warranty work."

It is therefore this Court's conclusion that no reasonable jury could find that the sidewalk work was not performed under warranty--whether or not it *should have been*-- meaning that it does not bring this case within the applicable limitations period. *See Anderson*, 477 U.S. at 248 (genuine issue of fact only exists where "a reasonable jury" could find for the non-moving party).

### IV. Conclusion

For the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment.

|  | /s/ |
|---|---|
| December 3, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |